(No. 27105.—)

Wilhelmina Wade, Appellant, *vs.* Victory Mutual Life Insurance Company, Appellee.

*Opinion filed November 16, 1943.*

Nelson, Boodell, Linneman & Grant, (Drennan J. Slater, and Thomas P. Grant, of counsel,) for appellant.

J. Ernest Wilkins, for appellee.

Mr. Chief Justice Smith delivered the opinion of the court:

Appellant brought this suit against appellee in the circuit court of Cook county. The purpose of the suit was to recover on an insurance policy issued by Victory Life Insurance Company. The policy was issued on the life of Frank B. Wade. Appellant, his wife, was named therein as beneficiary. The policy was issued on February 18, 1929. By the policy, the insurance company agreed to pay to appellant, as such beneficiary, the sum of $1500

upon the death of the assured, while the policy was in force. The circuit court entered judgment in favor of the defendant. On appeal to the Appellate Court for the First District, the judgment was affirmed. The case is here on leave to appeal granted by this court.

The facts are not in dispute. On May 25, 1933, a receiver was appointed, by the District Court of the United States for the Northern District of Illinois, for Victory Life Insurance Company. At that time the policy here involved was in force. All premiums thereon had been paid. The insured was then living.

Thereafter, with the approval of the court, in the receivership proceedings, appellee entered into a reinsurance contract with the receiver. By this agreement, appellee assumed the policies of the insolvent Victory Life Insurance Company. Appellee was given a lien on the reserve values of all policies in force, as of June 9, 1933. It was provided in the contract that appellee and the receiver of the insolvent company, should compute, as of that date, the value of the assets and the reserve value of each individual policy, in accordance with the formula set forth in the contract. It was further provided that there should also be computed, by appellee and the receiver of the insolvent company, the amount of the lien on such reserve values, to which appellee would be entitled under the reinsurance contract.

In accordance with the provisions of the contract, actuaries selected by appellee and the receiver made such computations. They made a tentative computation of the lien at 60 per cent of the reserve value of each policy, as of June 9, 1933. Upon a hearing the court entered a decree on February 13, 1934, in which the actual lien was definitely fixed at 57.092 per cent of the reserve values of the policies, as of June 9, 1933.

The decree further provided that such lien should be thereafter subject to reductions, as provided in the con-

tract of reinsurance. It was recited in the findings of the decree that the receiver and the reinsuring company had tentatively computed the lien against the reserves at 60 per cent; that any adjustment therein to the exact amount of the lien, on individual policies *"on a premium paying basis,"* should be deferred until December 31, 1934.

By paragraph 9 of the decree it was provided that in order to save unnecessary actuarial expenses, the reinsuring company was permitted to defer making the actual credit on the individual policy cards, until December 31, 1934. This language, however, was followed by the proviso "that whenever *any policy goes on a non-premium paying basis,* the reinsuring company shall compute the actual credit to such reserve resulting from the distribution of said items." The words "said items" used in this proviso, refer to three items referred to in paragraph 9, preceding the proviso, viz: (1) the difference between the tentative computation of the lien at 60 per cent and the actual lien determined by the decree, which was 57.092 per cent; (2) any savings or profits which should arise between June 9, 1933, and December 31, 1934, and which were to be distributed to the policyholders in reduction of the lien; (3) the credit of any savings which should arise because of the provisions concerning the election of creditors to take dividends as set forth in paragraph 8. These are the items referred to in the proviso.

The policy contained an automatic extended insurance provision. Under this provision it was provided that, upon default in the payment of any premium, the company, without action on the part of the assured, would extend the insurance for the full face amount of the policy for such period of time as the reserve value of the policy, at the time of such default, would purchase. Upon such default the policy did not lapse, but was placed on a nonpremium paying basis during the extended term of the insurance. Default was made in the payment of

premiums on August 18, 1934. By reason of such default, under the extended insurance provision of the policy, it was automatically placed on a nonpremium paying basis. It was, in effect, automatically converted into a term policy for such extended term as the reserve value of the policy would purchase insurance, on the life of the insured, for the full face amount of the policy. The gross amount of the policy reserve at that time was $90.75. There was, however, a loan indebtedness of $11.90, leaving the net value of the reserve $78.85.

The assured died on November 17, 1937. It is stipulated in the record that if appellee's lien on the policy reserve be computed as 57.092 per cent thereof, which was fixed as the actual lien by the decree of February 13, 1934, the extended term of insurance for the full face amount of the policy, expired two days after the death of the assured. If the lien be computed at the tentative rate of 60 per cent, the extended insurance expired thirty-five days before his death. The sole question here involved is the correct computation of appellee's lien on the reserve value of the policy, under the reinsurance contract and the orders of the court in the receivership proceedings.

We have already referred to the applicable provisions of the order of February 13, 1934. This decree remained unchanged until after the date the policy was automatically placed on a nonpremium paying basis. On September 25, 1934, which was a little more than a month after the policy was automatically placed on a nonpremium paying basis under the provisions of the policy, the appellee presented a petition to the court setting out that it had incurred certain unanticipated expenses in connection with the business which it had assumed under the reinsurance contract. The prayer of the petition was that the court instruct appellee with respect to the manner in which it should account, under the contract of reinsurance,

for the various items of earnings on continued business in reduction of the lien provided under the contract; that if the court be so advised, it authorize appellee and the receiver to enter into a supplemental agreement, a copy of which was attached to the petition, and such further relief as to the court should seem meet.

On the same day an order was entered by the court authorizing appellee to thereafter operate on the basis of a tentative lien of 60 per cent upon the policy reserves, and not distribute the difference between the tentative lien of 60 per cent and the actual lien of 57.092 per cent, until December 31, 1938, notwithstanding the provisions of the decree of February 13, 1934. For the purpose of carrying out this provision, the receiver was authorized to enter into a supplemental agreement with appellee. The only effect of this order was to modify the provision of the decree of February 13, 1934, relative to the time of distribution of the accumulated difference between the tentative lien of 60 per cent and the actual lien of 57.092 per cent. By the decree of February 13, 1934, such difference was to be distributed on December 31, 1934, and periodically thereafter. By the order of September 25, 1934, such difference was to be held in an unassigned surplus account until December 31, 1938.

By the decree of February 13, 1934, the reinsuring company was permitted, for accounting purposes, to use the tentative lien of 60 per cent and to withhold the difference in the amounts accumulated over the amounts which would have accumulated had the actual lien of 57.092 per cent been applied, until December 31, 1934. This, however, applied only to policies as long as they continued on a premium paying basis. The language of the decree is clear that when a policy went on a non-premium paying basis, then, for the purpose of determining the actual lien and the net amount of reserve remaining to the credit of the policy, applicable to the purchase

of extended insurance, the lien should be computed at 57.092 per cent of the net reserves. A careful reading of the decree leaves little room for controversy as to its meaning. The plain language of the decree was, "whenever" any policy goes on a nonpremium paying basis, the net reserve shall be computed on the basis of the actual lien fixed by the decree. "Whenever" means at whatever time a policy goes on a nonpremium paying basis. It does not mean at some time in the remote future. The computation was to be made at the time the policy was automatically changed to a nonpremium paying basis.

When this policy automatically went on a nonpremium paying basis, it was taken out of the provisions of the order of September 25, 1934, postponing the distribution of the difference between the tentative lien and the actual lien. The deferment of the distribution of the difference between the tentative lien and the actual lien applied only to policies which were on a premium paying basis. When a policy went on a nonpremium paying basis, the accrued difference was automatically credited and applied in the determination of the amount of the net reserves. The policy was not thereafter subject to deferment of the distribution of such difference, as provided in that order, because it had gone on a nonpremium paying basis. The policyholder had no interest in any difference between the tentative and the actual lien which might, thereafter, be accumulated. He had no interest in the distribution of any such difference after his policy was placed on a nonpremium paying basis. By its automatic transfer, according to the original provisions of the policy, it was credited with its full share of the accumulated difference. The provision of the decree for the deferment of the distribution of any difference between the tentative and the actual lien could not apply to the policy after it was placed on a nonpremium paying basis, for the simple reason that it had no interest therein. It had already re-

ceived its credit, which had been used by appellee to purchase extended insurance for the assured, as provided in the policy. When this policy was placed on a non-premium paying basis, the reinsuring company was required, by the decree of February 13, 1934, to immediately compute the net amount of reserves to be credited on the policy. This amount was to be ascertained by first computing the gross reserves credited to the policy, less the amount of the policy loan. From the net reserves thus computed, the lien of 57.092 per cent was to be deducted. The balance represented the net reserves available for the purchase of extended insurance. The extended insurance was purchased under the automatic provisions of the policy. The transaction was then closed.

The order of September 25, 1934, must be construed in connection with the petition on which the order was entered. The petition was entitled, "Petition of Victory Mutual Life Insurance Company requesting the instructions of the court regarding the distribution by it of earnings on account of reinsurance business and on account of revaluation of assets on account of the contract of reinsurance." It is clear that the principal purpose of the petition was to further defer the distribution of the items referred to in paragraph 9 of the decree of February 13, 1934. These items were, by that decree, to be distributed, as to policies which were *continued on a premium paying basis,* on December 31, 1934, and periodically thereafter. The petition on which the order of September 25, 1934, was entered, requested authority to enter into a supplemental agreement, extending the time of the distribution of those items until December 31, 1938. It was stated in the petition that this was necessary in order to enable the reinsuring company to accumulate a surplus fund to meet the requirements of the Insurance Department of the State of Illinois. No error in the computation of the amount of the lien is pointed out or com-

plained of in the petition. Its purpose was to permit the receiver to defer the distribution of the difference between the tentative and the actual lien until December 31, 1938; to enter into a supplemental agreement by which some of the assets taken over by the reinsuring company would be revalued, and thereby enable the reinsuring company to provide an "unassigned surplus fund," pursuant to the terms of the supplemental agreement.

The order entered on the petition authorized and directed appellee to create an unassigned surplus fund to be held until December 31, 1938. It directed that there be placed in this fund: (1) current earnings from new business; (2) net earnings from business assumed or converted under the contract of reinsurance, including the difference between the tentative 60 per cent lien and the actual lien of 57.092 per cent; (3) credits realized from a revaluation of assets. The order does not purport to change the actual lien, fixed by the decree of February 13, 1934, as to policies which had been automatically placed on a nonpremium paying basis. It deals only with the deferment of the distribution.

Prior to the time this order was entered, the policy here in question had automatically gone on a nonpremium paying basis. Under the order of February 13, 1934, the actual lien had been deducted from the reserve applicable to that policy. The lien had been fully satisfied. The net reserve had been used for the purpose of purchasing extended insurance in accordance with the automatic extended insurance provision of the policy. There was no further computation to be made as to this policy. The result was that this policy was not included in any of the provisions of the order of September 25, 1934, nor was there any attempt to include it in that order. The order was applicable only to those policies assumed by the reinsuring company, and which were, at that time, on a premium paying basis.

Appellee cites and relies upon one case in support of its contentions. That case is *Stevens* v. *Central Life Assurance Society*, 101 Fed. (2d) 383, (erroneously cited by counsel as "101 Federal Reporter 383.") That case, however, does not support the contentions of appellee. In that case the provision of the contract fixing the lien at 65 per cent was held by the court to apply to policies which, under the original policy provisions, had been automatically extended or converted into paid-up insurance for a fractional amount of the face of the policy. As to such policies 65 per cent of the net reserves was the basis fixed for computing the fractional amount of the face of the policy, to be continued as paid-up insurance. It was held that by a later provision in the contract the lien of the reinsuring company was fixed at 70 per cent of the policy reserves, as to all policies which had been automatically extended for a term of years for the full face amount of the policy. This presented an entirely different case from the case made by this record.

There is no merit in appellee's contention that the order entered in the receivership proceedings on September 25, 1934, constitutes an adjudication of the question here involved. No question even similar to the one here involved was either considered or determined in that order. Neither can that order be availed of as an estoppel by judgment.

It follows from what has been said, that the circuit court erred in holding that the policy lapsed prior to the death of the insured. The Appellate Court erred in affirming the judgment of the circuit court.

While we do not sustain appellee's defense, we cannot say that its failure to pay the amount of the policy was so vexatious or without such reasonable cause, as to entitle appellant to recover attorney's fees under section 155 of the Insurance Code. Ill. Rev. Stat. 1941, chap. 73, par. 767.

564

The judgments of the circuit and Appellate courts are reversed. The policy loan and the lien on the policy reserves were both deducted by appellee from the reserves when the policy was automatically converted into extended insurance. There appears to be no reason why this cause should be remanded. Judgment is entered here, in favor of the plaintiff and against the defendant, in the sum of $1950, that being the face amount of the policy with interest thereon at the rate of five per cent from November 17, 1937. *Reversed, with judgment here.*